We'll hear argument first this morning in Case 17-834, Kansas v. Garcia. General Schmidt. Mr. Chief Justice, and may it please the Court, in a typical and recent year, more than 15 million Americans became victims of identity theft. One-third of those had their personal information misused in an employment or tax-related fraud setting. Many of those victims were left to untangle reputations, eligibilities, and other finances. That is why Kansas, like every other state, makes identity theft a crime. Our laws apply in all settings to all people, citizen and alien alike. Respondents were convicted because they stole other people's personal information with intent to defraud. But in respondents' view, these state criminal laws that govern everybody else do not apply to them. They argue that Congress has, in effect, granted them special immunity because their intent was to obtain employment that Congress has forbidden. This Court never has so held and should not now. The conflict fatal to the Arizona Employment Statute is not present here because Kansas prohibits the theft of personal information by anybody, not work by unauthorized aliens. And this Court has identified no preempted field relevant here. Section 1324AB5 means what it says and no more. The I-9 verification system is available only for specified Federal uses. B-5's use limitation, which is quite different from typical preemption provisions, is one of several safeguards Congress adopted in 1986 to limit both governments' and employers' use of the then-novel I-9 system. But traditional state criminal law still reaches misconduct elsewhere in the employment context if proven without use of the I-9 system. For example, States certainly still may prosecute a felon who uses a stolen identity to defeat a background check as a condition of employment at a child care center, even if he also used the same stolen identity on his Form I-9. So, too, with the tax withholding forms used here. Ginsburg. But isn't it telling, General Smith, that in all three cases that we have, the prosecutor initially charged false Social Security number on the I-9, and it was only when the prosecutor appreciated that that couldn't be done that the I-9 charge was deleted? I think these cases are here, Justice Ginsburg, because they do, of course, present the issue of the intersection between IRCA and generally applicable State law. These cases all straddled in their timelines this Court's decision in Arizona. And I think that explains why the State originally attempted to use the I-9, then understood this Court's holding in Arizona, and withdrew from use of the I-9. I would point out, Your Honor, that all three cases arose, were discovered, the fraud was discovered, in a context outside the employment setting. This is not what was happening in subsequent cases in Arizona. Mr. Garcia's fraud was discovered first in a records check at a traffic stop. Mr. Morales, from a separate investigation related to workers' compensation. And Mr. Ochoa-Lara, from a separate investigation of different criminal conduct in an apartment. Do you agree that the result would be different if the information was harvested from the I-9s? In other words, if State officials went to employers and said, let me see your I-9s, and then that is used to gather information that's used in the Kansas prosecutions? I think it likely would, Your Honor. That is not what happened here, and it's not supported on these records. And I recognize that is a more difficult case. We can see that the State may not use the I-9 form. Whether that extends to a use investigation, I think, is perhaps a somewhat different question not presented here. I recognize it's difficult and we don't claim that ground, but I don't want to concede it more generally. Ginsburg. But the package that was submitted to the employer was all in one package, the I-9, the withholding form, Federal and State. It's not that these were discrete episodes. And in all three cases, the tax form, the I-9, the State tax form, was all for the same benefit that was, to gain employment. You can't gain employment without filling out those withholding forms. That's true, Justice Ginsburg. And I think that speaks to the important distinction that's at issue in this case. Our view of what Congress did in 1986 against the backdrop of this Court's decision in Duquesne is that prior to IRCA, the employment process generally was available to, was within the scope of State criminal law. In 1986, Congress created something new and different. It created this I-9 system, which was a novelty at the time. With the force of Federal law, Congress was ordering millions of private employers around the country to gather up personal information of their employees or potential employees and to hold that information. So Congress was understandably concerned about how employers and others might use that information. That's why they put the safeguards in. The distinction, we believe, that's been drawn is between the I-9 system itself, which Congress created and placed off limits, and the broader employment hiring context, which States have traditionally been able to reach and we believe still can reach. And so in the question that Your Honor has posed, the fact that documents might be submitted at the same time, all for a purpose of obtaining a job, does not transform tax withholding forms or any other hiring documents, like a resume, a job application, a background check form, into part of the I-9 system. And that system is what's provided. Sotomayor, can I unpackage your argument a little bit? Is it your position, you seem to be conceding, that you can't use the prosecute for any false statements on the I-9 form, correct? Your Honor, as I've said to the Chief Justice, we aren't doing that. We concede we don't intend to do that. I think maybe for a broader purpose that's the case. Sotomayor, so what meaning do you give to the part of the preemption language that says you can't use the form in any way? The precise language is, I think, don't have it. Is that the language in B-5, Your Honor, where Congress? Exactly. So if you can't use it in any way, why can you use the information contained therein for employment verification? Meaning, I certainly do understand an independent verification like a criminal check, criminal law check. But you're still using it for employment verification, correct? Well, I think not, Your Honor. And perhaps it's a linguistic distinction, but I want to be clear on what our point   That's why I'm having a problem, which is I'm not quite sure how you can concede one without conceding the second. We think that employment verification is best used to describe the I-9 system that Congress created in the IRCA, in that subparagraph B of IRCA, those first three paragraphs. Congress set up the system of attestation and the related obligations. That is what verifies employment, work authorization, for purposes of Federal immigration law. There are other things in the employment context that may be disqualifying for obtaining a job, but those aren't, in our words, employment verification that Congress has spoken to. All right. I understand that. It would be so easy to circumvent the I-9, then all they have to do is to switch to other forms submitted at the same time. Well, Your Honor, I think I understand the point. And if I understand it correctly, it is that information that is false, stolen information from somebody else that is contemporaneously submitted to an employer, if it's not the same false information on an I-9 and other employment-related documents, it would necessarily reveal the fraud on the I-9, if I'm understanding Your Honor's question. That may well be, but that doesn't change the fact that what Congress has fenced off here is the I-9 verification system, not the tax withholding system, not other aspects of the employment relationship. And if Congress had wanted to more broadly exclude States from that role, they knew how to do it. But the two things as Justice Ginsburg points out always go together, the I-9 form and the tax forms. In virtually all employment, you're going to be asked for a Social Security number on both forms. And so the States would, in essence, be able to go after unauthorized employment in a pretty substantial way, notwithstanding what Congress said about giving the federal government the role with employment verification. So how do you answer that concern? And in particular, I think Arizona's language on unauthorized employment. And so too, Justice Kavanaugh, ride together background checks for many, many jobs now, not just traditionally highly sensitive ones, teachers, for example, and employment application forms. Let's just focus on the I-9 and the tax forms and Social Security numbers, because that's what this is about. And that's going to be what a lot of these cases are about, I would think, if you prevail here. Then I think, Justice Kavanaugh, that the best answer to that is what Congress did not do. And if one looks, for example, at 26 U.S.C. 7205, which is a specific Federal crime that makes fraud on a W-4 form, I believe it's a Federal misdemeanor, Congress did not carve that out in the use exception that it created in B-5. It is nearly nonsensical to think that Congress, on the one hand, would have created a specific crime for W-4 fraud and yet precluded its application in situations in which the W-4 is most commonly submitted together with the I-9. It must be that Congress did not consider the umbrella of immunity as to the I-9 to extend so far as to hit the W-4. And, of course, Congress certainly didn't consider the immunity it was granting with respect to the I-9 to the extent it did to extend to the State tax withholding form, the K-4. Sotomayor, you couldn't sue or prosecute a case for someone's fraud on the W-4 and name the U.S. as a victim, correct? The fraud is on the government, because W-4s are submitted to the government for tax purposes, correct? I think you don't have the power as a State. I am sorry, Your Honor. I don't believe you have a power as a State to prosecute crimes where the U.S. is a victim. I am certain we don't do that, Your Honor. I know you don't, but it seems like there would be a real separation of powers to do that. And I'm certain we're not claiming that authority, Your Honor. We're not trying to vindicate the interests of the United States. So why is it permissible for you to prosecute or to claim there isn't a field preemption in doing exactly the same thing by calling this a fraud under State law? Because the victim has to be the U.S. Well, I'm not sure the victim does have to be the United States, Your Honor. I think the victims here are the individuals whose identities were stolen. That's stolen Social Security, but that's different than the fraud of submitting the W-4 to the government. I have a — I do have problems with the K-4 for your other side to answer, but your theory here on the K-4, I didn't see in the trial record where you argued that clearly to the three sets of juries. Your Honor, there was — Garcia was the only case that went to a jury. The other two were bench trials. And the K-4 was present, I believe, in two of the cases, in Mr. Garcia's case and in Mr. Morales' case. It was at least in the charging affidavits. I'd have to look at the record more carefully to see if it was — if it carried through. With respect to the field issue, Your Honor, this Court has never identified a preempted field in the employment context that would be applicable here. And to the extent that — Well, Arizona. Well, I think that Arizona, as we read it at least, Your Honor, with respect to the employment provision, the 5C provision in Arizona, that was a conflict preemption analysis where Justice Kennedy writing for the Court suggested that because of the method the State was using, the criminal law, Congress in that application in particular, had declined to use the criminal law to criminalize work by unauthorized aliens. Here, that analysis isn't present at all. Congress has criminalized fraud as well as identity theft. And so I think we're back in the traditional world where we have separate sovereigns who may go after the same conduct unless it's precluded, and here it is not. With respect to the field preemption issue as well, I think it would be difficult for this Court to recognize a preempted field now, particularly in light of the provision of the holding and whiting that was a conflict analysis holding but related to the E-Verify system. It's difficult to imagine how there is a preempted field States may not enter, even as to employment verification narrowly, and yet at the same time it was permissible for the State of Arizona to order the use of the E-Verify system to verify employment under Federal law. Kagan. I could go back to Justice Kavanaugh's question. Because you recognize that you can't use the I-9s to prosecute aliens in this way. But you also acknowledge that the W-4s are going to be present in every case in which the I-9s will be present, which gives you the ability to conduct all the prosecutions that you could have done through the I-9s. So what effect, then, does Congress's bar on states using the I-9s, in fact, have? I think, Justice Kagan, back to my earlier point about what Congress was doing, in our view, in 1986. Remember, prior to 1986, there was no federally mandated, very disparate requirement for collection of personal information throughout the country by employers. And Congress was very concerned about what now seems commonplace, but at the time was novel. They were concerned about how that information might be misused. And we think that explains Congress's choice of the language in B-5. They didn't use traditional preemption language as they did in H-2 as to employers. If they wanted to exclude states from this area entirely, they could have done it. They did it in this statute as to employers in H-2. But they used different language in B-5, a more passive voice. They didn't talk about states specifically at all or government specifically at all. They simply said that neither the form nor information on it nor anything can the attachments to it, appended to it, may be used. And I think they were principally worried about how employers might misuse it. Of course, I'm not suggesting they were inviting us. I'm just suggesting that was their focus and why they wrote the provision the way they did. Kagan. But let me ask the same question maybe from a different perspective, which is our decision in Arizona, because our decision in Arizona said that states could, in fact, not prosecute unauthorized employees for seeking employment. And but this gives you a tool to do just that in every single case. So essentially, it eviscerates everything that we said in Arizona, doesn't it? Well, Your Honor, as I suggested earlier, the way we read the reasoning in Arizona is not applicable here. So we think it is distinguished and separate. But if this Court were to, in our view at least, extend Arizona to cover this circumstance, you know, we think that would be a very different type of case than we have here. Well, you're talking about extending Arizona, but I'm suggesting that if you are right on this case, we might as well not have issued Arizona. No, I think not, Your Honor, because again, what the State is focused on here, and I don't think this is seriously disputed, mildly perhaps in the record, is vindicating its traditional interest in prosecuting fraud. The fact that incidentally our generally applicable laws intersect with the employment context or perhaps the immigration context does not mean that Congress has commanded nor should we carve out special application or lack of application of our general laws to persons because of their work authorization status. In other words, Arizona is a very different circumstance. We aren't targeting folks because of their status. We are enforcing our employment or our identity theft laws, and we don't want to give special exception to that to people because of their status. Thank you, counsel. Mr. Michel. Mr. Chief Justice, and may it please the Court. Respondents stole the identity information of others and passed it off as their own on tax withholding forms. There is no dispute that States could traditionally prosecute frauds and forgeries of that kind. The question is whether Congress withdrew that authority when it passed IRCA in 1986. Congress did not. IRCA is an immigration statute. It set up a new system, that's the Employment Verification System, precisely to verify whether employees have work authorization as a matter of Federal immigration law. Now, IRCA put express limits on the use of the form that employees submit to document their work authorization, and as the Court held in Arizona, IRCA also put implied limits on what States can do to regulate work authorization. But nothing in IRCA diminished the States' longstanding power to prosecute crimes like this one, nonimmigration offenses on nonimmigration forms submitted for nonimmigration purposes. And a statute designed, as a statute designed to prevent unauthorized work, IRCA certainly did not create unique immunities for unauthorized workers. Ginsburg. Does this represent a change in the government's position? I thought the government's prior position was that on documents that the employee or the prospective employee is filing at the same time as the I-9, there would be preemption. No, Justice Ginsburg. I think you're referring to the brief the government filed in the Ninth Circuit in the Puente, Arizona case. And in that brief, we took two positions that I think are relevant here. First, we took a position that's exactly the one we take here with respect to B-5, which is that that provision doesn't bar prosecution using forms other than the I-9. That's the express preemption argument. As to implied preemption, the government said in that brief that fraud on the work authorization process would be impliedly preempted. But the government, at page 23 of that brief, expressly said that fraud outside the work authorization process, for example, on tax withholding forms that we have here, would not be preempted any more than State laws that regulate drugs or robbery or other regular crimes would be preempted. So could a State have a law which says it is a crime for an alien to take information from the S form or other information that they give that's referred to in the Federal statute, and it is a crime to do that and fraudulently give it to an employer for the purpose of obtaining a job? I think that that might be preempted under the ---- Breyer. Well, is it or isn't it? In your opinion. I'm not holding you to it forever. I just want to know. I think, of course, that it's far removed from this case where ---- Well, I'm not saying that yet. I want to know if they could do that. In other words, shall I repeat it? You know what I say. Well, our position as we laid out in the Puente brief is that a law that regulates fraud on the work authorization process, which I think is what your hypothetical was, although I'm not sure I've drafted every piece of it. What it does is it says that if you take information from the S, is it S-9, is that what it's called? The I-9. I-9 or these other papers that are referred to, and you, Mr. Alien, go and give it to an employer for the purpose of pretending that you're somebody you aren't so you'll get a job, would that be preempted? I do think that would be preempted. So do I. Now, if that's so, I just wonder how this differs. Because it defines the State law as applied in this case, though it's much broader. But in this case, as it was put in the arguments by the prosecutors and by the complaints and so forth, what he did was, what was charged was using, identifying information or documents, which are the same information as on the I-9, using it to defraud another person, which they did, I guess, in order to receive a benefit. Which benefit was a job? So they took information from the I-9, used it to defraud an employer in order to get a job. Now, if there is a difference between what I just said and what I'd said when I was asking you the question, I'm not sure what it is. Maybe I can help you out. I think it's the distinction, and this is a critical one, between work authorization, which is a defined, which is a term of art under immigration law in IRCA, and general requirements for obtaining a job, such as submitting a tax withholding form, submitting a background check. Those are two quite different things. IRCA is an immigrant, as I said at the outset, an immigration statute that deals with work authorization to work in the United States. There are other requirements of law. For example, 26 U.S.C. 3402 requires a tax withholding form. But that has nothing to do with work authorization. Regardless of your work authorization status, you still have to submit a tax withholding form. And I think one way to illustrate the distinction is that a U.S. citizen who has undoubted work authorization could submit the same materials that were submitted here, a false Social Security, a stolen Social Security number on the I-9 and the I-9 form, and they submitted it to get a job. It said nothing about they submitted it to get a job because it showed we paid taxes. It said nothing about they submitted it to get a job because it showed we paid taxes. And I think the allegation here is that the defendants were aliens and that, moreover, they submitted the information from the I-9 form. It didn't say I-9 form, but it was from the I-9 form. And they submitted it to get a job. It said nothing about they submitted it to get a job because it showed we paid taxes. And I suspect they submitted it to get the job because the employer would think they were a different person. So, Your Honor, I think. Where am I wrong on that? So I think at a minimum, they submitted it for two different reasons. One, perhaps to demonstrate work authorization, which it couldn't be clearer that Arizona is not prosecuting here. I mean, excuse me, that Kansas is not prosecuting here because it dismissed the counts on the I-9. They also submitted it, and there is testimony in the record about this, that the employers would not have given them the jobs, but for their submission of the tax reform. Alitoso, before your time expires, about the meaning of language in B-5, any information contained in the I-9, what does that mean? I think that simply covers everything that's on the I-9 form, and that's an effort by Congress to cover broadly everything that's on the form, in case there were some creative prosecutor who wanted to say, well, we've extracted a piece of the I-9, and therefore, we're not using the I-9 in violation of B-5. And even if this Court might not find that a very persuasive argument, I think it makes sense that Congress wanted to be doubly sure that they were covering the full form. Alitoso, I still don't understand what you make of it and how it fits the language of the statute. Information means generally a fact, all right? So facts contained in the I-9 would be the name, the Social Security number, the address, all the facts that the applicant for employment puts on the I-9. Now, I agree that that — it can't mean that. That produces ridiculous results. It can't mean that those facts can never be used by anybody for any purpose. But I don't quite see how — I don't really understand. You interpret this to mean they can't use the I-9 in whole or they can't use the I-9 in part, isn't that? That's what it comes down to. How does that fit the language of the statute? Oh, I think if you look at the full phrase, Justice Alito, which is, use the I-9 or any information contained in the I-9, I think it simply means that they can't use either the I-9 in whole or the information that appears on the I-9, which, you know, if you look at the I-9, which is in our appendix, it has the Social Security number and other information like that. But you forget the rest of it, which says, for purposes only related to the fraud sections of the Federal Code. So it does seem to me to be limiting the use for fraud related to employment verification, seeking a job. That last point, I think, is the critical one. Work authorization under immigration law is not the same thing as seeking a job in general. And to go back to the point I was making to Justice Breyer, if you allowed prosecution of that U.S. citizen or if you allowed preemption of the prosecution of the U.S. citizen who committed, who gave exactly the same forms here, you would be letting immigrate, you would be letting preemption flow from the State. Breyer, I would just say, if this statute is used by a State to prosecute roughly the very thing that the Federal statute reserves to the Federal government, they can't. And so the question is, is it the very thing? And then my question has been trying to figure out why it isn't the very thing, because it certainly sounds like the very thing. I agree that the terms sound similar, but I do think it would be a mistake to be confused  Let me put the same sort of question in another way, because when you were speaking with Justice Breyer, you said that a State law that regulates fraud in the work authorization process would be preempted. And I guess the question here is, Kansas has a generally applicable law, but even generally applicable laws can be used to regulate fraud in the work authorization process. And when a statute, even though generally applicable, is used in that way, shouldn't the same results follow? May I answer, Mr. Chief Justice? Yes. Yes, the answer is yes, and that, I think, was manifested in this case by Kansas dismissing the I-9 charges. Those were the charges that related to work authorization, which is the purpose of IRCA. These other charges that related to matters not related to work authorization were not preempted by IRCA, which is, after all, an immigration statute, and therefore were properly not preempted. Thank you, counsel. Mr. Hughes. Mr. Chief Justice, and may it please the Court. I'd like to begin with the rule that we ask the Court to adopt. States may not prosecute individuals for using false information to demonstrate work authorization under Federal immigration law. To put this slightly differently, if, to satisfy an element of a State offense, the State proves an individual used false information to show Federal work authorization, IRCA preempts the prosecution. If this element is not present, there is no IRCA preemption. Even if they were applying to a college? I'm sorry, you can answer that question after your time is up. I'm sorry. Thank you, Your Honor. IRCA requires preemption here because Kansas prosecuted respondents for using false information to demonstrate Federal work authorization. Kansas chose to prosecute fraud claims. One element it had to prove was that respondents used deceit to obtain property. Kansas had one theory. Respondents used false information to show employment eligibility, and thus they obtained jobs. Had respondents used truthful information, Kansas maintains, they would not have been hired because of Federal immigration law. In the intermediate State court, respondents argued that the State had insufficient evidence to prove the benefit element. Adopting the State's argument, the Court held that Kansas satisfied the requirements of State law by proving that respondents wrongfully showed that they were eligible for employment. Now, according to the Kansas Supreme Court, quote, the State seeks to punish an alien who used the personal identifying information of another to establish the alien's work authorization. Indeed, Kansas initially charged respondents with fraud on the I-9. While it dropped those charges, its theory of the prosecution remained exactly the same. For purposes of preemption, the label a State attaches to its regulation is not relevant. What matters is what the State actually regulates. So here, Kansas is prosecuting the use of false information to show work authorization under Federal immigration laws. Kansas has charged two State offenses, both of which include the element of an intent to defraud. Roberts. If the I-9 process, the individual applying for authorization uses a false social security number, can that number ever be used to prosecute him for identity theft? Yes, it can, Your Honor. Our theory of preemption is a limited one. In our view, what Federal law preempts is a prosecution for the use of false information with respect to showing that somebody is authorized under the Federal immigration laws for employment. That is the element that Federal law preempts. If a prosecution ---- I'm sorry. Just so the social security number is used in the I-9 process to establish work authorization. Yes, Your Honor. And the State can use that number so long as it's not being used to show work authorization. That's right, Your Honor. If the State offense has unrelated to work authorization, our theory of preemption does not apply. In our view ---- Including to get a job, right? In other words, work authorization and applying to get a job are, as Mr. Mischel told us, two different things. I think that's inaccurate, Your Honor, because the way the State prosecuted here was absolutely tethered to Federal work authorization, and there are a few different ways that we know this is true. First, if the Court looks to the brief that the State sent to me ---- I don't mean to interrupt. Just so I make sure we're on the same page. So you would say that the social security number, even though it's information contained on the I-9 in the process, can be used, say, to get a driver's license, but not to get a K-4? Well, I think that's right, Your Honor. So if this is tied to Federal work authorization, that is where preemption occurs. And we know that that is the theory of prosecution in these cases. How are you defining work authorization, just so I'm clear on the answer to the Chief Justice's question? Yes, Your Honor. This is incorporated from Federal law. So the question is, is an element of the offense that an individual was showing as a matter of Federal law that they were authorized for employment. If that is the nature of the fraud, then that is something that solely the Federal government is authorized to prosecute. If it's not that theory, our theory of preemption does not apply in those circumstances. Sotomayor, give us some examples. That was my earlier question. Let's assume you mentioned getting a driver's license, or getting into a college, or getting a credit card. Let's assume that false information was used for any of those processes. Our theory of preemption does not apply to any of those. All right. But let's assume that the question the college asks is simply, are you authorized to work in the United States? If the element is, are you authorized as a matter of Federal immigration law to work in the United States, and somebody commits fraud in answering that question, that is what Federal law preempts. And so our theory of preemption is a straightforward one that we think is easily applied, which is just the question of is this an element that is necessary to the State offense. If it is, there is preemption. If it's not, there is no preemption. Sotomayor, how about a form that you file so that your employer will directly deposit your pay into your bank account? So, Your Honor, if there is the element that I just described is not present, we don't think there is preemption. And let me say that I don't think there is preemption. If the question, the form is submitted so that your pay will go directly into your bank account, is that preempted or not? Well, Your Honor, and again, to answer the hypothetical, I have to know if the prosecution includes an element of what the fraud is, because in that theory, Your Honor, it's not clear why the use of a false Social Security number would be relevant to or would be a material aspect. But if it is, that prosecution could proceed. So the State's may impose requirements for particular jobs or maybe even for all jobs, but let's just stick to particular jobs that go beyond the requirements necessary for obtaining any employment in the United States, such as information for a criminal background check or to prove age that's a requirement for the job, using dangerous machinery, does your argument apply to that? No, Your Honor. If the State has those sorts of requirements that are unrelated to the Federal immigration laws and they – there is a valid State law that requires information at the time of hiring for those reasons, our argument does not apply in preemption of those requirements. So if the K-4 serves a purpose other than policing, compliment with the Federal requirement for obtaining work, then that would be sufficient? Well, I think – and let me be quite clear about this, Your Honor. I think if the State had charged this as simply the Kansas misdemeanor offense, which is making a false statement on a State tax form, I think we would have a very different case in that circumstance. Why does it matter? Because the distinction, Your Honor, is because when the State prosecutes using, in the theory, is false information to show Federal employment authorization, that is an immigration offense. That's an immigration offense that's defined by IRCA, the Immigration Reform and Control Act. That's an immigration offense that is regulated by the Federal immigration authority. So to make all these distinctions that you're talking about, you look to the elements of the State law, or you look to the underlying conduct, or you look to both, how does it work? Your Honor, I think you look to the elements and then you understand, as applied in that context, what is the theory that the State is offering to prove the elements of that offense. So the elements of this offense, it's just, as I understand it, using someone else's identity, right? It's to receive a benefit, Your Honor, and it's that receipt of the benefit that is the necessary element. Okay. The receipt of the benefit could be a completed form that's required by the State for other purposes besides immigration law. Your Honor, if the State would be used for other purposes, Your Honor, if a State But we agree the State form can be used for other purposes besides compliance with the immigration laws, right? Yes, I think I agree with you. Okay. All right. I think we have to, right? I mean, States are allowed to enforce their tax laws, right? Yes, of course. Of course. Okay. So a false statement on that form could be for other purposes, and it's not essential to the crime of identity theft, is it? That's right, Your Honor. And our point, though, is the State, if the State had wanted to charge this as a State tax offense of saying we have these State tax forms, you've put inaccurate information on it. No, no, but even identity theft, would you concede then that a State could have an identity theft case based on the same form? Your Honor, I think the question is what their theory of benefit is, what is the intent of the crime? So it's not about the elements, it's about the theory, the facts, and their intentions. Well, Your Honor, there is an element of the offense, the intent to defraud, and then the State applying that to the individual circumstance has to show what the intent to defraud in that particular case is. If a State passes a law making it a serious felony to use a false Social Security number on a State tax form, is that State law preempted? I don't think so, under our theory, no, Your Honor. Well, how is that different than — Because that's not what Kansas has done here. What Kansas has done here — And why exactly is it different from what Kansas has done here? And how does that fit with your implied preemption theory of enforcement discretion, which I thought was tied to the use of the false Social Security number? Your Honor, what Kansas has done here is it is on its face objectively prosecuting an immigration offense because it has said repeatedly in the lower courts that the intent to deceive element was showing that individuals used false information to show that they were eligible under Federal law to hold employment when they were, in fact, not. What type of — Well, Mr. Yu, it just seems a little bit odd to look to, you know, particular statements that Kansas made in order to determine whether a particular prosecution is preempted. So that's why I ask the question that I ask. It's like how, as a general matter, do you go about determining whether a prosecution is preempted? Your Honor, I think it's the same analysis the Court used in the case like Buckman, for example. And Buckman is looking at general State fraud laws and said, well, this is fraud on the FDA. How do we know if this is within the range of things that are preempted? And one of the tests that Buckman used that I think is directly relevant here is Buckman said State laws in that context were not simply parallel to Federal laws, but in fact, the State offense was derivative of the Federal offense, because one of the critical requirements to show the State law fraud was showing that there was an underlying violation of the FDA's own regulations that led to that fraud. So, Mr. Yu, just to follow up on Justice Kagan's question, if Kansas' theory of the benefit in this case were that by filing a W-4, the defendant had an intention to comply with Kansas' tax law, would that be unpreempted in your theory? I think that would be safe, right? I think that might be, Your Honor. I think that the State might have a difficult one. Okay. So we are down to drawing distinctions on preemption here based on Kansas' particular intentions in a particular case. Well, it's the nature of how they're applying the intent to defraud element in that context. We certainly don't think that all of Kansas' I.D. fraud laws are preempted, nor all I.D. fraud offenses with respect to Social Security. But again, Mr. Yu, the idea of it's because of how they're applying their law. How do we know how they're applying their law at the outset, right? We want to make these decisions at the outset. Can this prosecution go forward or can it not? How do we know how they're applying their law in this particular case? I think as a practical matter, Your Honor, what would happen in a case like this is if the State charges somebody with this issue that is around a hiring offense, saying that there's identity theft, the defendant, under the rule that we permit or we advance, would be entitled to file a motion to dismiss that charge, saying this charge is preempted by Federal law. And the State would then have an opportunity to say, no, that is not the theory of prosecution that we advance in this particular case. Sotomayor, Mr. Hughes, can I ask you to bring your answer to a more practical answer, which is, how would you think – give me a hypothetical or even this, why this case differs from the case you think is not preempted. By that I mean, what do you see in the – what are the words in the charge here that are different than the words that you think are not preempted? So I think looking just to the charge itself can be difficult, Your Honor, because the State charges often are preempted. Sotomayor, that's why the Kansas court went to the – to the as-applied challenge. However, the State appellate court said that this goes directly to employment eligibility, and this is exactly how, when the Respondent's challenge saying you've not provided us sufficient evidence to show the benefit element, the State was obligated to say, here's the evidence that we have shown that satisfies the benefit element. What was the evidence they provided? It was exclusively eligibility for employment that's tethered to Federal immigration law. And judges will never make that mistake again, Mr. Hughes. And in every future case, they will say the benefit that the Defendant is seeking is the opportunity to comply with our tax laws and our – our revenue laws, and – and that will be the end of that. So we are – we are deciding how many angels are dancing on the head of this pin? Is that what – is that what this case is about? I disagree with that for a few reasons, Your Honor. First, they still will have to convince the jury that there is, in fact, a benefit. And I think that's something that's – Sure. No, of course they have to. Of course they have to. But it's not preempted. And none of these cases will ever be preempted again after today. Well, a few things about that, Your Honor. First, there are other ways to comply with the K-4 without using somebody else's Social Security number, including, for example, using an I-10, an individual taxpayer identification number. So that is a way that – that might happen. But every time an employee uses a false identification number in these cases, Kansas will use a different set of magical words, and that will be the end of this problem. But, Your Honor, what the distinction is, is while Kansas may prosecute a wide range of offenses on its tax system, and we certainly don't disagree with that, what Kansas might not do is have its own individual immigration policy in immigration offenses. I think – I agree with you there are ways that Kansas can charge the similar sorts of conduct when it relates to the tax system that is not a State adopting its own immigration system. And I think – What type of – Just to conclude with that point, Your Honor, I think to the extent that this is, as you suggested, angels dancing on a pin, I think that suggests the opposite conclusion precisely as to why preemption is warranted here because of how Kansas charged this case. And if that is where the Court agrees, then there shouldn't be any concerns about – But why shouldn't we dig this case? I mean, if this is about a one-off prosecution that has no chance of recurring ever again, and, you know, I mean, I know you're vigorously defending your client, but we don't usually take cases that have such limited application. We would perfectly welcome a dig, Your Honor. I think that would be an appropriate outcome in this case. What type of – what type of preemption are you relying on? What type of preemption are you relying on? Your Honor, we argue both express preemption on the language of 1324a)(b)(5), as well as conflict with – or, sorry, with – as well as implied – with respect to implied – I don't see how you get express preemption out of b)(5), and I don't know what the conflict is. What is the conflict? The conflict is the similar sorts of conflicts that the Court recognized with respect to section 3 of SB 1270. But what is the conflict? The conflict is the exercise of prosecutorial discretion, how the Federal Government uses prosecutorial discretion to establish a consistent Federal discretion. Well, how do we know that the Federal Government has taken the position that this particular case or cases of this particular type shouldn't be prosecuted? This is not a situation like Arizona, where a State has criminalized something that is not criminal under Federal law. It's a case where the same conduct is criminal under Federal law and, Kansas says, under Kansas law. So where's the conflict? But, Your Honor, that was exactly the case with respect to section 3 of SB 1070, where the State had adopted precisely the Federal standards in assessing what was the underlying State offense, and they still found preemption. But what is the conflict? The Federal Government doesn't say this is contrary to our – our enforcement priorities. The conflict is States having independent immigration policies that differ from how the Federal Government has established the priorities with respect to both which act prosecute. But you conceded that a State could pass a law making it a felony to use a false Social Security number on a State tax form. Your Honor, and that would not be an immigration offense, and that would not be a State having its own individual immigration policy. But that would be – but that would certainly be a way for a State to target people who are noncitizens who are unlawfully in the country from obtaining employment by enacting such a law. So I guess following up on Justice Alito's question, I'm not sure if that's not a conflict, why there's a conflict here. Your Honor, if there is an underlying targeting that is the intent behind that law, I think that might be susceptible to other challenges, not the ones we bring here, but related to either constitutional claims or selective enforcement or other kinds of challenges to that. That is by no stretch the argument, though, that we press in this case. So the – to follow up again on Justice Alito's, the specific reason that that's a conflict is? The specific reason is because the Federal Government establishes a uniform immigration policy with respect to who they're going to prosecute and who not, and that has immigration consequences. But beyond that, I think our field preemption argument is an extraordinarily strong one because all of the criteria that existed with respect to Section 3 of SB 1070 are present here. There's the exact same sort of comprehensive and systematic system of immigration, civil and criminal penalties. And only the Federal Government can exercise many of the forms of discretion that are baked into those enforcement mechanisms. So just to offer one example, it is a deportable offense to use false information in order to have fraud on the Federal Employment Verification System. However, there's a discretionary exception to that. If an individual enters the United States as a lawful permanent resident and then is working solely to support his or her own immediate family, the Federal Immigration Authorities can waive deportation in those circumstances. Only the Federal Government can balance that policy as an immigration matter. When the States prosecute, the only remedy is the State criminal offense and not the graduated and varying mechanisms that the Federal Government has in place. Alito, if the person whose identity is stolen has, let's say, five dependents and the applicant for employment has no dependents but puts down five dependents, so less money will be withheld under Federal and State law, could that applicant be prosecuted for that offense? Your Honor, as I've said, our theory is that yes, applicants can be prosecuted – sorry, the immigrant who's put down the information can be prosecuted. Yes, Your Honor, I think that an alien who uses false information can be prosecuted for State tax offenses. Now, Kansas has made quite clear in their brief, I think this is at page 10 of the reply brief and a footnote, that they chose not to pursue tax offenses in this particular case. That was a decision that I think rested on Kansas as to whether or not they would pursue this as a tax offense case, and they said quite clearly they did not and declined to pursue a prosecution in that fashion. Now, employment eligibility here, much has been made from the Government that employment eligibility is separate from work authorization. That is not the circumstance here because we know that Kansas said so in its briefs as well. In the petition, the appendix that we – Why should we worry about the briefs below? I guess I'm following up on Justice Gorsuch's question. We have a serious issue that's going to affect how States go forward here, and particular statements in the briefs below should not define that. They'll just use different statements next time. Well, Your Honor, I think the point is – I think there are two points. First is what is the rule the Court should adopt, and we've said our rule that we is preempted if it – an element of that is use of false information to show Federal employment authorization under the immigration laws. And the second question is the applicability of that in the context of this case. Of course, that is something the Court could leave for remand if the Court agrees and adopts our rule, which would be an appropriate way to do it. But I think it's at least telling that what the State has done in this case is brought a prosecution that looks exactly like the same prosecution if they were prosecuting for fraud on the I-9 itself. And so we know that from 1324a)(b)(5), that Congress, in enacting IRCA in 1986, made the determination that States may not prosecute fraud on the I-9 itself. I think it would not do much to that statute if States can prosecute the exact same theory, the exact same kind of immigration offense, simply if they look at the K-4 or the W-4 forms and disclaim reliance on the I-9. I'm repeating myself now, but you've said many times the State could have a law prohibiting false statements on the K-4. Yes, I think they could, Your Honor. That's right, and that wouldn't be an immigration offense, and that would not be an immigration offense. And you said that's fine, even though that might be the same kind of conduct that would be done on the I-9. Your Honor, I think if somebody were challenging that law, it would be an argument that's different than the sort of argument that we're advancing for you here. I'm not saying that's the case. Well, they're not challenging the law. They would be challenging the application of the law and the use of the law in a particular prosecution, much as you're doing here. And the question is, why would there be a different result? I don't think that would be preempted, Your Honor, because it would not be prosecuting an immigration offense. I think an as-applied challenge would probably be a challenge that would be based on selective prosecution, if that were a theory that were available, given the facts. I can't say that it would, but that would be the way that that law would likely be challenged. Breyer. So in fact, the here the State is prosecuting this person for using this false information, which is on the I-9 or wherever, in order to show that he has Federal authorization to work and thereby is entitled to a job, which is the property which he tried to get  Is that right? Yes, Your Honor. And in a different case, they might not use the words in their brief. They might not use the words, he was trying to get the job by showing he was Federally authorized. But I suppose that those were the facts. So they'd be rather pressed to use different words unless the facts were different. Is that not so? I think that's because I mean, if they were trying to get a job by using this to show that they were in the hospital, then the defense would say, or the prosecution would say, they showed they were in the hospital. And if they tried to get it through showing authorization, Federal, the prosecution would say that. Wouldn't they have to? I think that's right, Your Honor. And that just goes to say that when, during the course of the prosecution, the prosecutor is going to have to identify what the theory of the fraud is. Yes. And that they're going to have to put that before the jury. And if the theory of the fraud is you've used false information to show compliance with Federal work authorization requirements, that is preempted. And if that is not what the prosecutor is arguing, if they have a different application of the general state. So is it up to the defense lawyer in the court, I mean, I don't know if he could always say this, but say to the jury, jury, they've used the word fraud to obtain a benefit. But they have not explained to you how that fraud was used to obtain a benefit. They do not have witnesses who you see in other, et cetera. What I'm driving at is this is not a one-off case that will never occur again, but rather it will occur in every instance where the facts justify it. That's right, Your Honor. Am I right or no? Don't say I'm right if I'm wrong. No, you're right, Your Honor. And I think, as you suggest, this will come out in the context of something like a motion for acquittal. But I'll also say the rule that we advance is in large measure a prophylactic rule, because prosecutors engage in good faith. And if the Court identifies this clear rule that we've advanced, that prosecution, State prosecutions can't turn on the element of use of false information to show Federal work authorization, I think we can rely on prosecutors who won't bring those charges that have that as a particular element. And if there are charges that are close to the line, then those are things that trial courts will figure out in the course of motions for acquittal or motions to dismiss or motions in limine, and that will be sorted out based on the actual evidence that was put before in the particular case. But I do think the prophylactic nature of this rule is in keeping with exactly what the structure Congress created in IRCA. I don't think there's any other way to understand what 1324a)(b)(5 does. Again, I believe Kansas is in agreement that they can't prosecute fraud if the fraud is on the I-9 itself. And in every case there is going to be a K-4 and a W-4, in every single case. And so if Kansas is correct about Federal preemption in this context, 1324a)(b)(5 did effectively nothing when Congress enacted it. Sotomayor, according to you, can't have a law that says you can't have a job in this State unless you submit a K-4? Kroger, Kansas, sorry. Kansas can't say, have a law that says you can't have a job in this State without a K-4. I think Kansas probably, I don't think there's a Federal preemption problem with that. And again, as we said. So why isn't that this case? They're saying they couldn't get this job unless they submitted the K-4. That's not this case, because that is not the State of Kansas law. Under Kansas law, it's actually to the opposite, as we noted in footnote 8 of our brief. Kansas law does not require the submission of a K-4 at the time of hiring. As a matter of fact, it generally does occur. But Kansas State law specifically provides for individuals to be hired without submitting a K-4. So it's simply not the theory of prosecution that was available to Kansas in the facts of this case and not what it was that they, in fact, advanced. So ultimately, again, we think that this is a narrow case, that use of false information to show Federal work authorization is the element that is preempted. It's a clear rule. It's a rule that the trial courts across the States can regularly implement. And we think it's the only rule that actually gives effect to what Congress did in 1324 AB5. Absent that rule, States would be eligible to prosecute the exact same offense that I think everybody agrees is expressly preempted under the text of IRCA, so long as it's given a different name. And that's simply not how preemption works. As this Court has said repeatedly, preemption looks to what the State is, in fact, regulating, not the label that the State uses for the prosecution. Alitoson How is it expressly preempted under B-5? That argument mystifies me. B-5 says nothing about work authorization. It says nothing about aliens. It says nothing about the use of the information by a State government or by the Federal government. It applies to any use. How you can read the argument that you're making into B-5 is something that escapes me. Can you explain that? So a few things, Your Honor. First, I think B-5 certainly identifies the policy that Congress enacted, which informs our arguments under field preemption, and I think that may in part be the best way to look at this. But second, with respect to B-5 itself, I don't think there is much dispute that it is a preemption provision, because I think the Federal government has agreed that it means you can't prosecute fraud on the I-9 form itself. The real question is, what is the breadth of that express preemption provision? And what Kansas has suggested is that it's either all or nothing, that either it has the language and any information contained in effectively does nothing because it reduces just to what the form is or a partial aspect of the form, or if you give any meaning to that language, then there's no limitation and everything is fair game. That is not how the Court should interpret this, and that's not how the Court interprets preemption statutes more broadly. Take, for example, the Marich v. Spears case where the Court was assessing the language in connection with this. Alito, but you want us to say, you say it's expressly preempted, even though all of the elements, practically all of the elements of the rule that you're advocating are not mentioned at all in B-5. But you want us to read all of those in and then say this is an express – this expressly preempts. Now, you may have a good argument under some other category of preemption, but how it can be expressed, how it can be expressed preemption is really something. Well, this is information that is contained in, and they're using it for the same purposes that underlie B-5, which is showing Federal claim not position. Did I understand you to say that you thought your better theory was field preemption, not express preemption? I think they're both good theories, Your Honor, but yes, I think the B-5 points up to field preemption, and I think field preemption is a very strong theory for us, because this – we have direct congressional direction that establishes the balance between the States and the Federal Government. And in B-5, whether one thinks that that is express preemption or not, I think it undeniably identifies the policy judgment of Congress that the Federal Government alone should have the authority to prosecute these immigration offenses. Thank you. Roberts. Thank you, counsel. Three minutes, General Schmidt. Schmidt. Schmidt. Thank you, Mr. Chief Justice. I'd like to try to make three points with respect to Justice Alito's line of questioning on the B-5 language. B-5 is certainly, if read as a preemption provision, most unusual, not least of which is because it is not aimed exclusively at States. Preemption is a supremacy clause concept that regulates the relationship between the Federal Government and States. But B-5 speaks not only to that, but also to the relationship between the law Congress passed and what the Federal Government may do, and most importantly, as I was discussing earlier with Justice Kagan, what private employers may do with this information that they were compelled to collect and maintain in a novel manner back in 1986. And we think that explains your earlier question, Justice Alito, with respect to what does information contained in mean. We think it is an effort by Congress to make absolutely clear, not just to States and not just to the Federal Government, but to millions of private employers who now must, by command of Federal law, maintain this private information, that they may not use the form or information harvested from the form or information attached and submitted for the purpose of satisfying the requirements of the form. We don't think express preemption gets them there. Second, with respect to the benefit question, which I think goes perhaps to, I'm not sure if it goes to conflict or field, I'm a little uncertain about that. But on the benefit issue, what we agree is off limits is the I-9 system. We aren't arguing that Kansas prosecuted these individuals because they were trying to commit fraud on the I-9 system. We are arguing that they defrauded folks whose identities were stolen and that we used as evidence the W-4 and K-4 tax forms. We didn't use the I-9 system. With respect to the notion that somehow preemption turns not on the intent of Congress, but on the subjective intent of the offender, that turns preemption analysis on its head. And a hypothetical, I think, that illustrates that, imagine that, let's say Mr. Garcia on the facts here, were stopped for speeding, not because he was headed to a job he already had, but because he was headed with completed employment forms, applications in the back of his car, to apply for the job. He still would be guilty of the same state law crimes of identity theft. His intent was to obtain the benefit of employment, but he never arrived at the employer to apply for the job in the first place. That can't be the test that makes the difference here. And finally, with respect to the notion of what the State is asking for here, we're a little unclear on exactly what field our friends on the other side think is preempted. As I suggested earlier, if there is one, it has to be extremely narrow, the I-9 system itself. But we're not sure a field exists there because of the decision in Whiting that States may compel the use of the E-Verify system, which certainly is part of work authorization. So this Court has never identified a field and should not with respect to this case. The conflict we don't see. The conflict that was present in Arizona, as we discussed earlier, is not present here. This is a fundamentally different case. Kansas is not trying to act as an immigration enforcer, but to enforce our generally applicable identity theft laws. Thank you. Thank you, counsel. The case is submitted.